IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ZACHARY JOHNSON, | ) | CASE NO. 1:19-CV-02636-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| WARDEN HAROLD MAY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.    INTRODUCTION

*Pro se* Petitioner Zachary Johnson ("Johnson") seeks a Writ of Habeas Corpus under 28

U.S.C. § 2254. (ECF Doc. 1). Johnson, an Ohio inmate, is currently serving a 31-year to life

aggregate prison term for aggravated murder, murder, attempted murder, felonious assault,

discharging a firearm at or near a prohibited premises, and having a weapon while under disability.

Respondent Warden Harold May[1] ("Respondent") filed a Return of Writ. (ECF Doc. 5). Johnson

filed a Traverse. (ECF Doc. 6). The matter is before me[2] by an automatic order of reference under

Local Rule 72.2 for preparation of a report and recommendation on Johnson's Petition and other

---

[1] Harold May was warden of Richland Correctional Institution when Johnson filed his petition, and Kenneth Black is now warden. *See* https://drc.ohio.gov/rici (last visited Nov. 7, 2022). Kenneth Black should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

[2] This matter was originally before Magistrate Judge William H. Baughman, Jr. pursuant to an automatic order of reference. Due to Magistrate Judge Baughman's retirement, this case was referred to the undersigned pursuant to General Order 2022-14 on September 2, 2022.

case-dispositive motions. For the reasons set forth in detail below, I RECOMMEND that the Court

DENY and/or DISMISS Johnson's Petition because his claim is procedurally defaulted. I also

RECOMMEND that Kenneth Black, the Warden of Richland Correctional Institution—where

Johnson is currently incarcerated—should be substituted for Harold May as the Respondent in this

case.

## II.    RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct." 28

U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir.

2017). The Ohio Court of Appeals for the Eighth District set forth the following facts on direct

appeal:

> **{¶2}**    In August 2016, Johnson was charged in a ten-count indictment.    Count 1
> charged him with aggravated murder.  Count 2 charged him with murder.  Counts
> 3, 4, 6, and 7 charged him with felonious assault. Count 5 charged him with
> attempted murder. Count 8 charged him with discharging a firearm at or near a
> prohibited premises. Counts 9 and 10 charged him with having a weapon while
> under disability ("HWWUD").[3]
>
> **{¶3}**    The matter proceeded to a jury trial, at which the following evidence was
> adduced.[4]
>
> **{¶4}**    On July 5, 2016, Maurio Ayers ("Ayers") was killed in a drive-by shooting
> on Thornhill Drive in Cleveland. Charles Wright ("Wright"), who lives on
> Thornhill Drive, was also shot and injured in the incident. Melton Peoples
> ("Peoples") was visiting with Wright when the shooting occurred.     Peoples
> testified that Ayers stopped by in his car around 8:30 p.m. Peoples and Wright
> approached the street and stood on the sidewalk talking with Ayers for
> approximately 15-20 minutes when another vehicle approached. Peoples described
> the car as a dark grayish, tanish, brownish color. As this vehicle passed, Wright
> said "[t]hat * * * * Zach [Johnson] right there." There were some issues between
> Ayers and Johnson because Ayers allegedly stole some drugs and money from
> Johnson.

---

[3] Each of Counts 1-9 carried one- and three-year firearm specifications and a five-year "drive-by shooting" firearm
specification.
[4] Both HWWUD counts and the firearm specifications were tried before the bench.

{¶5}   Johnson's car turned back around toward Peoples, Wright, and Ayers. Peoples testified that he observed two or three people in the car with guns pointing out the windows. Peoples then dropped to the ground for safety and was able to avoid injury.  He heard approximately six to eight gunshots. Ayers was shot in the back, and Wright was shot in the foot. After the shooting, Ayers told Peoples and Wright that he was going to the hospital and sped away in his car. He subsequently crashed into a nearby church at the corner of Thornhill Drive and Arlington Avenue, where he died of his gunshot wound.

{¶6}   Meanwhile, Peoples and Wright ran into Wright's house. Before the police arrived, Peoples fled to his sister's house, but returned to the scene after learning that the shooting was fatal. Both Peoples and Wright spoke to the police.[5]

{¶7}   Derrick Miller ("Miller") testified that Johnson confessed to killing Ayers when they were both in county jail awaiting trials in their respective cases.   Miller explained that it is common for inmates to discuss the crimes they committed that brought them to jail. He knew both Johnson and Ayers prior to his incarceration. During one of these conversations with Johnson, Johnson told Miller that he murdered Ayers in revenge because Ayers had robbed him of drugs and money.

{¶8}   According to Miller, Johnson staged a drug deal in order to come into contact with Ayers to kill him. Johnson allegedly told Miller that he used a machine gun known as a "Mack 90," but the casings found at the scene came from a hand gun.   Miller also told a Cleveland detective that Johnson was driving a black BMW that night. Miller admitted that he agreed to testify against Johnson in order to obtain a favorable plea agreement with the state in his own case.

{¶9}   The defense called another inmate, Quentin Allison ("Allison"), to testify as a rebuttal witness to Miller's testimony. Allison testified that inmates rarely discuss their cases, especially with strangers, but some inmates "snitch" to get their time reduced. Allison admitted, however, that Johnson is one of his childhood friends.

{¶10}  The state presented testimony from DNA and ballistics experts.   There was no DNA evidence on the bullet casings found on the scene that linked Johnson to the crimes. Nor was the ballistics expert able to identify any gunshot residue on the victim, which indicated that the muzzle to target distance was not close.

{¶11}  The state also presented the testimony of Todd Wiles ("Wiles"), a crime analyst with the Cleveland Police Department. He has been an analyst for 25 years. He has been to both federal and state law enforcement training academies for multiple cell phone analysis courses and is an active member of the International Association of Crime Analysts. The trial court accepted Wiles to testify as an expert.

---

[5] Wright did not testify after asserting his Fifth Amendment right against self-incrimination.

3

**{¶12}** Wiles testified that cell phone data placed Johnson's cell phone near the crime scene at the time of the shooting. However, Wiles conceded that determining a cell phone's location from cell tower data is not precise because the towers cover an area "roughly a quarter of a mile" in size. As a result, Wiles was unable to pinpoint the exact location of Johnson's cell phone at the time of the shooting. Through the data, Wiles was only able to narrow the range to a particular area.

**{¶13}** Cleveland Police Detective Arthur Echols ("Detective Echols") testified that Johnson lived at two different addresses, including 1105 Carlyon Road in East Cleveland. Johnson's sister testified that he was living at the Carlyon address at the time of the shooting. Detective Echols estimated that the Carlyon Road address was "a quarter of mile to half a mile away" from the crime scene.

**{¶14}** Detective Echols attempted to set up a meeting with Wright to conduct an interview, but Wright was uncooperative with the investigation. In order to facilitate a meeting, Detective Echols met with Wright when he was scheduled for a meeting with his parole officer. Detective Echols had generated a photo array, with Johnson as the suspect. As a result of the photo array and Echols's interview with Wright, the police issued an arrest warrant for Johnson.

**{¶15}** At the conclusion of trial, the jury found Johnson guilty of all charges and the trial court found him guilty of the two HWWUD charges. After merging allied offenses, the court sentenced Johnson to a total of 31 years to life in prison

*State v. Johnson*, 2018-Ohio-1389, at ¶¶ 2-15 (Ohio Ct. App. 2018). (ECF Doc. 5-1, PageID#191-95).

## III.    RELEVANT STATE PROCEDURAL HISTORY

### A.  State Conviction

On August 15, 2016, a Cuyahoga County Grand Jury indicted Johnson, charging him as follows:

| Count | Charge | Ohio Rev. Code | Offense Date |
|-------|--------|----------------|--------------|
| 1 | Aggravated Murder – UF | § 29003.01(A) | On or about 7/5/16 |
| 2 | Murder – UF | §2903.02(B) | On or about 7/5/16 |
| 3 | Felonious Assault – F2 | §2903.11(A)(1) | On or about 7/5/16 |

4

| 4 | Felonious Assault – F2 | §2903.11(A)(1) | On or about 7/5/16 |
| 5 | Attempted Murder – F1 | §2923.02/2903.02(A) | On or about 7/5/16 |
| 6 | Felonious Assault – F2 | §2903.11(A)(1) | On or about 7/5/16 |
| 7 | Felonious Assault – F2 | §2903.11(A)(2) | On or about 7/5/16 |
| 8 | Discharge of Firearm on or Near Prohibited Premises – F1 | §2923.162(A)(3) | On or about 7/5/16 |
| 9 | Having Weapons Under Disability – F3 | §2923.13(A)(2) | On or about 7/5/16 |
| 10 | Having Weapons Under Disability – F3 | §2923.13(A)(3) | On or about 7/5/16 |

(ECF Doc. 5-1, Ex. 1, PageID#35-43). Three Firearm Specifications were contained in Counts One through Eight. (*See generally id.*). Johnson, represented by counsel, entered a plea of not guilty to all counts, and the case was set for trial. On January 12, 2017, Johnson waived his rights to a jury trial and elected for a bench trial on the two counts of having weapons under disability and all firearm specifications. (*Id.*, Ex. 2, PageID#44). The case proceeded to a jury trial on the remaining counts, and Johnson was found guilty. (*Id.*, Ex. 3, PageID#45). The trial court also found Johnson guilty of the having weapons under disability charges and the firearm specifications. (*Id.*, Ex. 4, PageID#46). On March 27, 2017, the trial court sentenced Johnson to an aggregate term of imprisonment of 31 years to life. (*Id.*, Ex.5, PageID#47-49).

**B.  Direct Appeal – Ohio Court of Appeals**

On March 27, 2017, Johnson, represented by new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals, Cuyahoga County. (*Id.*, Ex. 6, PageID#50-52; Ex. 7, PageID#61-99). Johnson asserted the following assignments of error on direct appeal:[6]

(1) The trial court erred in allowing cell phone site testimony as it was both a discovery violation and was not *Daubert* tested. The court also erred in qualifying the state's

---

[6] Johnson's assignments of error in his direct appeal to the Ohio Court of Appeals are set forth verbatim herein, including certain typographical and/or grammatical errors.

witness as an expert and admitting his testimony as such, as his conclusions were
unreliable and were not within a reasonable degree of scientific certainty.

(2) The court violated the Appellant's right to confrontation and due process when it
improperly allowed the admission of incriminating and impermissible hearsay
statements.

(3) The State failed to present sufficient evidence of the offenses charged.

(4) Appellant's convictions are against the manifest weight of the evidence.

(5) Appellant was denied due process and a fair and impartial trial as guaranteed by the
5th, 6th, and 14th Amendments of the U.S. Constitution and Article I § 16 of the
Ohio Constitution based on prosecutorial misconduct.

(6) Appellant was denied effective assistance of counsel in violation of Amendments
VI and XIV, United States Constitution; and Article I, Section 10, Ohio
Constitution.

(*Id.*). The State filed an opposition brief. (*Id.*, Ex. 8, PageID#100-38). On April 12, 2018, the Ohio

Court of Appeals for the Eighth District overruled all assignments of error and affirmed the trial

court's judgement. (*Id.*, Ex. 9, PageID#139-71).

### C.  Direct Appeal – Ohio Supreme Court

Johnson, through counsel, timely appealed this decision to the Ohio Supreme Court. (*Id.*,

Ex. 10, PageID#171-72). He stated the following propositions of law:[7]

(1) The trial court cannot admit uncross-examinable testimonial hearsay without
violating the accused's Sixth Amendment right to confrontation and the evidence
rule barring hearsay.

(2) The trial court sacrifices its central function as gatekeeper by not first determining
the reliability of a witness's testimony.

(3) A conviction that is not supported by legally sufficient evidence violates State and
Federal rights to due process and must be vacated on appeal.

---

[7] Johnson's assignments of error in his direct appeal to the Ohio Supreme Court are set forth verbatim herein,
including certain typographical and/or grammatical errors.

(4) A prosecutor commits misconduct in violation of the accused's rights to due process under the 5th, 6th, and 14th Amendments of the US Constitution and Article I § 16 of the Ohio Constitution by knowingly introducing improper evidence and by making improper closing arguments to the jury.

(5) An attorney provides ineffective legal representation in violation of his client's rights under the Constitution's Sixth Amendment when he fails to zealously advocate on his client's behalf.

(*Id.*, Ex. 11, PageID#177-188). The State filed an opposition brief. (*Id.*, Ex. 12, PageID#218-224).

On August 15, 2018, the Ohio Supreme Court declined to accept jurisdiction pursuant to

S.Ct.Prac.R. 7.08(B)(4) and dismissed the case. (*Id.*, Ex. 13, PageID#225).

### D.  App. R. 26(B) Application to Reopen Direct Appeal

On July 12, 2018, Johnson, *pro se*, filed an application to reopen pursuant to App. R. 26(B).

(*Id.*, Ex. 14, PageID#226). Johnson alleged his appellate counsel was ineffective due to counsel's

failure to raise the following assignments of error on direct appeal:[8]

(1) Appellate counsel's performance was ineffective in violation of appellant's Sixth and Fourteenth Amendment rights under the U.S. Constitution when she failed to raise on appeal that the convictions for Case No. CR-16-608678 was the result of insufficient evidence in violation of Appellant's Fourteenth Amendment Right under the U.S. Constitution.

(2) Appellate counsel's performance was ineffective in violation of Appellant's Sixth and Fourteenth Amendment Rights under the U.S. Constitution when she failed to raise on appeal that the indictments failed to give Appellant sufficient notice violation of Appellant's Fifth, Sixth, and Fourteenth Amendment Right under the U.S. Constitution.

(3) Appellate counsel's performance was ineffective in violation of Appellant's Sixth and Fourteenth Amendment Rights under the U.S. Constitution when the State used evidence [cell-site records] at trial that purportedly placed Appellant at the scene of the crime that was obtained without first getting a search warrant.

(*Id.*, Ex. 14, PageID#226-30). The State opposed Johnson's 26(B) application. (*Id.*, Ex. 15,

PageID#236-40). On December 19, 2018, the Ohio Court of Appeals denied Johnson's 26(B)

---

[8] Johnson's assignment errors in his 26(B) application are set forth verbatim herein, including certain typographical and/or grammatical errors.

application on the basis that it was untimely. (*Id.*, Ex. 16, PageID#243-45). Johnson did not appeal the denial of his Rule 26(B) Motion to the Ohio Supreme Court.

## IV.  FEDERAL HABEAS PETITION

On November 12, 2019, Johnson, *pro se*, filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). In his Petition, Johnson failed to list specific grounds for relief. Nonetheless, Johnson asserts that he was denied the effective of assistance of trial counsel because: (1) counsel was allegedly abusing drugs at the time he represented Johnson; (2) Johnson was denied his constitutional right to an impartial jury due to counsel's failure to properly screen a juror who had a prior relationship with Johnson's mother and was biased against him; and (3) counsel refused to investigate the exculpatory claims of eyewitnesses or call them to testify on Johnson's behalf. (*See id.* at 2-5). Johnson contends that but for the ineffective assistance of trial counsel, the outcome of his trial would have been different. (*Id.*).  Further, Johnson asserts that one of the victims, Charles Wright, a witness for the State, is now willing to testify that he gave false statements to law enforcement and, as such, is a witness to Johnson's innocence. (*Id.*).

## V.  LEGAL STANDARDS

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced Johnson, and the Court takes judicial notice that Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over petitioner's § 2254 petition.

**B. AEDPA Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Gordon's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id*.

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would

10

have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under de novo review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, *quoting Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### C. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This

entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim

will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### D.  Actual Innocence

In *Schlup v. Delo*, 513 U.S. 298, 314-315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a habeas petitioner who makes a "colorable showing of factual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s] considered on the merits." This exception is concerned with actual - as opposed to legal - innocence and must be based on reliable evidence not presented at trial. *Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 559 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. at 324.

## VI.  ANALYSIS

### A.  Parties' Arguments

#### 1. *Johnson's Habeas Petition*

In his sole ground for relief, Johnson asserts that he was denied the effective assistance of trial counsel. Johnson contends that his trial counsel only cared about "getting the money when they would meet and would not have time to review the case" and, "under information and belief," trial counsel was abusing substances during the course of the representation. (ECF Doc. 1, PageID#2). Johnson further asserts that his trial counsel: (1) refused to call three eyewitnesses to

the stand to testify in his defense; and (2) failed to properly screen jurors, allowing "biased" jurors who had prior relationships with his mother to sit. (*Id.*). With respect to Johnson's claim regarding the three eyewitnesses, he argues that these eyewitnesses were exculpatory witnesses because they would testify that he was at his brother's home at the time of the murder. (*Id.* at 3). Regarding his claim that trial counsel failed to properly screen jurors, Johnson asserts that one juror did not disclose to the trial court that he knew Johnson, Johnson's mother, and the reputation of the mother's children. (*Id.* at 4). Johnson contends that the outcome of the trial would have been different but for these alleged errors.

Further, Johnson asserts that one of the State's eyewitnesses, Charles Wright, is now willing to provide exculpatory testimony. (*Id.* at 5). Johnson contends that Wright is prepared to testify that: (1) he lied to law enforcement during his interrogation; (2) the only photo police showed him during his interrogation was Johnson's photo, not a "photo array with any other individuals"; and (3) Johnson was not the shooter. (*Id.*). Johnson maintains that this proposed evidence demonstrates his innocence. (*Id.*). Johnson concludes by asserting that there is no physical or forensic evidence to link him to the murder for which he was charged. (*Id.*).

### 2. Respondent's Return of Writ

Respondent asserts that Johnson's claims were not fairly presented for review to the state court. (*See* ECF Doc. 21, PageID#20-26). Respondent asserts that Johnson never made a claim of juror bias in any prior filing before the state court and has not previously asserted Wright's willingness to testify to any state court. (*Id.* at 20-21). Because none of these claims have been fairly presented for review to any state court, Respondent contends that these claims are procedurally defaulted. (*Id.*). Respondent maintains that Johnson presented factually different claims regarding his trial counsel's performance upon direct appeal, and that Johnson's alleged

constitutional errors are allegations that should have been raised as a federal constitutional violation in a direct appeal. (*Id.* at 24). Because Johnson failed to do so, Respondent asserts that he is barred by *res judicata* from further pursuing these issues within the Ohio courts. (*Id.* at 25).

To the extent that Johnson's claims rely on evidence outside the record, Respondent states that Johnson failed to seek any post-conviction relief under O.R.C. § 2953.21(A)(2). (*Id.*). Since Johnson's direct appeal was decided over a year ago by the Eighth District Court of Appeals, Respondent argues that any filing of a post-conviction petition would be untimely and time-barred from any merits review. (*Id.*). And even assuming Johnson could show that he was unavoidably prevented from presenting Wright's new testimony or any of his other claims, Respondent reiterates that Johnson had to first raise these issues in the state court. (*Id.* at 25-26).

Respondent also asserts that Johnson has failed to establish cause or prejudice to excuse default. (*See id.* at 26-28). Respondent contends that Johnson does not allege any cause to excuse his failure to fairly present his habeas grounds within direct review. Specifically, Respondent states that Johnson had the opportunity to address these concerns within his 26(B) application, but Johnson did not claim his appellate counsel was ineffective for failing to raise any claims "even remotely similar" to those set forth now in his Petition. (*Id.* at 27). Respondent asserts that Johnson cannot claim he had his appellate process "hijacked" by ineffective appellate counsel because Johnson, while acting *pro se*, had the ability to present these claims in an Ohio appellate court. (*Id.*). Respondent notes that because the state appellate court deemed his 26(B) application untimely, those claims within his 26(B) motion have been procedurally defaulted. (*Id.*). Respondent also notes that Johnson "compounded that default" by failing to appeal the Rule 26(B) decision to the Ohio Supreme Court. (*Id.*). Respondent thus maintains that Johnson's ineffective

assistance of appellate counsel claim is itself procedurally defaulted and cannot serve as cause. (*See id.* at 27-28).

Finally, Respondent asserts that Johnson has not demonstrated that he qualifies for the miscarriage of justice exception because he has not presented the Court with any "new evidence." (*Id.* at 29). Although Johnson alludes to his trial counsel ignoring witnesses, failing to secure witnesses' appearance, and failing to eliminate a "biased" juror, Respondent notes that Johnson failed to provide any affidavits from any of these witnesses, much less any "actual reliable evidence" regarding what their testimony would be or why they failed to come forward prior to or during his trial. (*Id.*). Moreover, Respondent asserts that Johnson has not provided new evidence regarding his trial counsel's drug use during his trial proceedings. (*Id.*). He maintains that even if there were such evidence, it would not undermine the overwhelming evidence of guilt presented at trial, *i.e.,* one of the witnesses testified to Wright's identification of Johnson at the scene of the murder, and a fellow jail inmate testified that Johnson confessed to the murder. (*Id.* (citing ECF Doc. 5-1, PageID#142-43)).

Respondent further asserts that Wright exercised his Fifth Amendment rights and refused to testify. (*Id.* at 29-30). Respondent contends that Johnson failed to indicate why Wright's testimony should be considered new and reliable evidence. (*Id.* at 30). Specifically, he argues that Wright was "obviously available" at the time of Johnson's trial but refused to testify, even when he was offered immunity. (*Id.*)*.* Further, Respondent asserts that Johnson "benefitted a great deal" from Wright's refusal to testify because Wright's statements to the police were excluded as hearsay at trial, so the jury never heard the statements that Johnson now contends are false. (*Id.*). Respondent notes that the officer who administered the photo array did not testify that Wright identified Johnson in the photo line-up. (*Id.*). And even if Wright lied to the officers, Respondent

maintains that it would not undermine the testimony of Peoples regarding Wright's identification of Johnson before the shooting. (*Id.*) Moreover, Respondent points out that Johnson did not provide the court with any affidavit from Wright or any account other than Johnson's own Petition to support his claim. (*Id.*).

Finally, Respondent argues that although Wright cannot be considered a recanting witness because he refused to testify, Johnson's unsupported allegations that Wright lied to the police during the investigation of Johnson's case should be viewed with the "utmost suspicion." (*Id.* (citing *Bower v. Curtis*, 118 Fed. App'x 901, 908 (6th Cir. 2004)).   Respondent notes that Johnson failed to attach any affidavits to his Petition, nor do any affidavits appear anywhere in the state record. (*Id.* at 31). Accordingly, Respondent maintains that Johnson failed to present any new, reliable evidence that would demonstrate that no reasonable juror would have found him guilty. (*Id.*).

### 3. Johnson's Traverse

Johnson asserts in his Traverse that his claim is not procedurally defaulted. He states that his trial attorney was "constitutionally deficient in all areas of his performance." (ECF Doc. 6, PageID#247). Acknowledging that his appeal only noted "some areas," he nevertheless contends that "it certainly was not an exhaustive list of inadequacies." (*Id.*). Johnson maintains that he fairly presented his claims because he asserted constitutional challenges in state court proceedings. (*Id.*). Johnson asserts that he fairly presented his claim because the arguments in his appellate brief were based on federal law and, as a result, both the factual and legal basis for his claim of ineffective assistance of counsel were made to the state court. (*See id.* at 247-49). He acknowledges that "he may not have presented in his writ the 'same' allegations as in his appeal brief, but, nonetheless, he did fairly present his claim [of] ineffective assistance of counsel." (*Id.* at 248). Relying on

17

*United States v. Chronic*, 466 U.S. 648 (1984), Johnson asserts that he should be presumed to have been prejudiced by ineffective assistance of counsel, that he does not need to make a showing of prejudice, and that the ineffective assistance of counsel "amounts to a 'complete denial of' his constitutional rights." (*Id.*).

Further, Johnson asserts that a procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim, so long as he can establish cause and prejudice regarding the ineffective assistance of counsel claim itself.  (*Id.* at 249). He contends that he was unaware of his trial counsel's alleged substance abuse problems until an Ohio Supreme Court investigation occurred. (*Id.*). If it had not been for ineffective counsel - "whether it was drug related or not" – Johnson claims that he would not be incarcerated. (*Id.* at 250). In addition, he asserts that he lacked knowledge to fairly present his claim due to Wright's refusal to testify at trial. (*Id.*).

### B.  Procedural Default

#### 1. *Fair Presentation of His Claims*

Johnson's sole ground of relief is procedurally defaulted because he failed to fairly present his claim at every level of review in the state court system. Before coming to federal court, a habeas petitioner must give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). If the petitioner fails to do so and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, which means this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised

at every available stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Here, the record is clear that Johnson did not raise on direct appeal an ineffective assistance of trial counsel claim based on substance abuse, failure to properly examine jurors, and failure to investigate. Johnson, however, raised many *other* issues regarding his trial counsel's alleged ineffective assistance on direct appeal, including that trial counsel failed to: (1) obtain a continuance after new evidence was provided to the defense; (2) obtain an independent expert witness; (3) request a *Daubert* hearing; (4) properly object to inadmissible hearsay and improper argument; and (5) request a competency evaluation for his client. (ECF Doc. 5-1, PageID#62). Further, on his appeal to the Ohio Supreme Court, Johnson raised these same issues. (*Id.* at 177-87). Significantly, the claims that Johnson now presents in his Petition are entirely new and factually different from those raised on direct appeal.

Johnson's assertion that "as long as he constitutionally challenged his claim in his state proceedings, he has fairly presented them" is not well-taken. (ECF Doc. 6, PageID#247). For a claim to be fairly presented, he must present both the factual and legal bases of the claim. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004). A petitioner's claim "*cannot rest on a legal theory which is separate and distinct* from one that has been previously reviewed and rejected by a state court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (emphasis added).

Here, although Johnson raised ineffective assistance of counsel claims on direct appeal, the ineffective assistance of counsel claims contained in his Petition are based on *entirely different facts* than those raised on direct appeal. It is well-settled in the Sixth Circuit that "[t]o the extent that [an ineffective assistance] claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented." *Carver v. Straub*, 349

F.3d 340, 346-47 (6th Cir. 2003); *see also Miku v. Gray*, 2020 WL 13454081, at \*9 (N.D. Ohio Sept. 11, 2020) (finding that petitioner did not fairly present his ineffective assistance of counsel claim because his federal habeas petition claim was based on "entirely different facts"). And the relatedness of a claim does not "preserve a not previously raised issue for federal habeas review." *See Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001) (finding that the "relatedness" of the petitioner's issues did not save his claim from procedural default). Accordingly, Johnson has failed to fairly present these trial counsel ineffective assistance claims.

Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *see also McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013). Under this dual-track system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)). In this system, *res judicata* bars an ineffective assistance of trial counsel claim that is brought in a state post-conviction petition that relies on evidence within the trial record because such a claim could have been brought on direct appeal. *Id.* (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)). Ohio courts routinely apply *res judicata* to such claims. *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)) ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.").

To the extent that Johnson's claims are based on evidence within the trial record, Johnson procedurally defaulted because he failed to fairly present these claims on direct appeal. And as set forth above, *res judicata* prevents Johnson from raising any issues in subsequent proceedings that he could have raised on appeal.  *See Williams*, 460 F.3d at 806.

To the extent that Johnson's claims are based on evidence outside the trial record, they are procedurally defaulted because he did not pursue post-conviction relief in state court for these alleged issues under O.R.C. § 2953.21(A)(2). *See Buckley v. Ohio¸* No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020). Under O.R.C. § 2953.21(A)(2), any post-conviction relief motion must be filed within 365 days of the date the trial transcript was filed with the court of appeals. Johnson's direct appeal was decided by the Ohio Court of Appeals on April 12, 2018, meaning that at this point any post-conviction filed by Johnson would be deemed untimely and time-barred from merits review.

And even assuming that Johnson could demonstrate that he was unavoidably prevented from presenting his new claims, he was still required to raise these issues to the state court under Ohio's post-conviction relief statute. O.R.C. § 2953.23(A)(1) permits a trial court to entertain an untimely post-conviction petition if the petitioner was unavoidably prevented from discovering the facts on which the petition is predicated. After satisfying this threshold, Johnson had to demonstrate that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offenses of which he was convicted. O.R.C. § 2953.23(A)(1)(b). To this date, Johnson has failed to file any such post-conviction relief petition.

Accordingly, because Johnson failed to present these claims to any state court in his direct appeal and failed to follow the "ordinary appellate review procedures," his claims are procedurally defaulted. *Boerckel*, 526 U.S. at 847.

### 2. Cause and Prejudice

To excuse procedural default, Johnson must demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. Cause requires a showing that an "objective factor external to the defense impeded counsel's efforts to comply with the state

procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice requires a showing that "the trial was infected with constitutional error." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488). Prejudice does not occur unless petitioner demonstrates "a reasonable probability that the outcome of the trial would have been different." *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Johnson may not overcome his procedural default by asserting denial of effective assistance of appellate counsel. The United State Supreme Court has recognized that claims of ineffective assistance of appellate counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Here, Johnson filed a *pro se* 26(B) application to reopen his direct appeal. (ECF Doc. 5-1, PageID#226). In it, Johnson contended that his appellate counsel was ineffective for failing to raise claims of insufficient evidence, the indictment not giving sufficient notice, and his records being secured without a search warrant. (*See id.* at 227-32). The Ohio Court of Appeals determined that his claims of ineffective assistance of appellate counsel were untimely and denied his 26(B) application. (*Id.* at 241-45). Time constraints in a 26(B) application are "an actually enforced, adequate and independent state ground upon which the Ohio Courts consistently refuse to address ineffective assistance of appellate counsel claims." *Fautenberry v. Mitchell*, 515 F.3d 614, 639 (6th Cir. 2008); *see Coleman v. Mitchell*, 244 F.3d 533, 539-40 (6th Cir. 2001) (finding that the petitioner procedurally defaulted his claim because he failed to comply with the requirements in Ohio App. R. 26(B)). Johnson further procedurally defaulted these claims by failing to appeal the state appellate court's denial of the Rule 26(B) application to the Ohio Supreme Court. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

Because such claims are procedurally defaulted, Johnson may not assert ineffective assistance of appellate counsel as cause.

To the extent that Johnson's claim is procedurally defaulted for failure to raise in a timely post-conviction petition under O.R.C. § 2953.21, he cannot assert ineffective assistance of counsel as cause. This is so because "[t]here is no right to counsel in post-conviction proceedings." *See Coleman*, 501 U.S. at 752.

Johnson argues that he has cause because he and his appellate counsel were unaware of his trial counsel's alleged substance abuse problems. Yet the only evidence Johnson offers to corroborate this claim is his own "information and belief." (ECF Doc. 1, PageID#2). Specifically, he offers his own observation that his attorney was "jerky and sweaty," his brother's belief that his attorney "only cared about 'getting the money' when they would meet and would not have time to review the case," and his own "information and belief" that a formal complaint had been filed against the trial counsel. (*Id.*).[9] Significantly, the attached screenshot of his trial counsel's discipline history does not lend any credence to these allegations. (*See generally* ECF Doc. 6-1, PageID#251-52). Rather, it merely shows this Court the disciplinary actions taken against his trial counsel, their dates, and the assigned case number.[10] (*Id.*). Moreover, Johnson has not provided an affidavit that would support his conclusory assertion that his appellate counsel lacked knowledge regarding this issue on direct appeal. (*See* ECF Doc. 6, PageID#249). It is well-established that

---

[9] It is unclear from Johnson's Petition whether he or someone else reported this alleged substance abuse to the Ohio Supreme Court. (*See* ECF Doc. 1, PageID#2). Although it is his "information and belief" that a formal complaint was filed against his trial counsel, Johnson has failed to produce this alleged formal complaint—or any other evidence—to support his conclusory allegations.

[10] Further, closer review of the specific instance of misconduct indicates that his trial counsel was suspended from the practice of law *not* for alleged substance abuse but for ethical violations arising from his representation of clients in two separate cases—including the neglect of one client's legal matter, failure to limit the scope of the other's client representation, failure to reasonably communicate with either client, and failure to deposit an unearned fee into his client trust account—and his failure to cooperate in an ensuing disciplinary investigation. *See Cleveland Metro. Bar Ass'n v. Mariotti*, 2019-Ohio-5191, 158 Ohio St. 3d 522, 145 N.E.3d 286.

23

"[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2007) (citations omitted) (noting also that the petitioner must offer "more than the mere proffer of an excuse" to satisfy the cause-and-prejudice standard).

Johnson's argument for cause, in essence, is his merits argument for his entire ground of relief—ineffective assistance of trial counsel. (*See* ECF Doc. 6, PageID#250 ("Zachary contends that had it not been for ineffective counsel, whether it was drug related or not, he would not be incarcerated.")). However, this does not establish the requisite cause because cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2007) (citations omitted). Further, it is well-established that "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Id.* (quotation omitted) (stating also that petitioner must offer "more than the mere proffer of an excuse" to satisfy the standard). By simply recasting his merits argument by making conclusory statements, Johnson has failed to allege some external factor impeded his or his counsel's ability to raise these issues before the state courts.

Finally, Johnson cannot rely on his *pro se* status and ignorance of the law to provide cause for his procedural default. The Sixth Circuit has repeatedly rejected petitioners' attempts to blame their failure to comply with procedural requirements on their ignorance of the law or on limited prison resources. *See, e.g.*, *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding a

petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default).

Accordingly, Johnson has failed to establish cause for the default of his trial counsel ineffective assistance claim. Because Johnson has failed to establish cause, it is unnecessary to consider whether he has shown prejudice. *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("The cause-and-prejudice analysis is a conjunctive one, requiring a petitioner to satisfy both prongs to excuse a procedural default.").

### 3. *Miscarriage of Justice Exception*

Although Johnson does not specifically state such in his Traverse, his assertions regarding cause appear to intertwine with claims of actual innocence, which can serve as an excuse for procedural default.[11] Johnson alleges that he would not have been convicted if: (1) his trial counsel had not abused substances during his proceedings; and (2) Wright, the witness that refused to testify at trial based on the invocation of his Fifth Amendment rights, "t[old] the truth during the time [Johnson's] case was on appeal." (*See* ECF Doc. 6, PageID#250).

Johnson's remaining route for excusing the procedural default of his ineffective assistance of trial counsel claim is to make a credible showing of actual innocence. The *Schlup* standard is a deliberately "demanding" bar reserved for "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A petitioner's showing of a credible claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315 (quoting *Herrara v. Collins*, 506 U.S. 390, 404 (1993)).

---

[11] Further, at the end of his Petition, he cites to a case, *Herrera v. Collins*, 506 U.S. 390 (1993), regarding actual innocence as an excuse for procedural default when discussing Wright's alleged false testimony. (*See* ECF Doc. 1, PageID#5).

Because a gateway-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *House*, 547 U.S. at 538. We may, among other things, "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of new evidence." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (cleaned up).

The threshold inquiry for this claim is whether "new facts raise [] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup*, 513 U.S. at 317 (1995). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousely v. United States*, 523 U.S. 614. 623-24. To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324.

### a. Trial Counsel's Alleged Substance Abuse

Johnson fails to present any new, reliable evidence regarding his trial counsel's alleged substance abuse during trial proceedings. First, Johnson has not explained why the alleged exculpatory "new evidence" regarding his trial counsel's alleged substance abuse was not available to him at the time of his trial. He offers only his own conclusory assertions that neither he nor his appellate counsel were aware of an alleged investigation into his trial counsel. (*See generally* ECF Doc. 1, PageID#2; ECF Doc. 6, PageID#249-50). He does not offer any affidavit of his appellate counsel's knowledge. (*See* ECF Doc. 6, PageID#249-50). Moreover, as discussed above, Johnson bases his claims regarding trial counsel's alleged substance abuse on his personal speculation regarding trial counsel's demeanor and his brother's opinion regarding the trial counsel's lack of

dedication towards Johnson's case. (ECF Doc. 1, PageID#2). The disciplinary history screenshot provided by Johnson does not corroborate his assertion that trial counsel has been disciplined—or even investigated—for substance abuse. (ECF Doc. 6-1, PageID#251-52). Further, Johnson failed to produce the formal complaint that he alleges has been filed against his trial counsel "upon information and belief." (*See generally* ECF Docs. 1, 6).

Because Johnson provides no new, reliable evidence beyond his own conclusory, speculative, and unsubstantiated assertions regarding his trial counsel's alleged substance abuse, Johnson has failed to demonstrate his actual innocence. *See Jackson v. Sloan*, 2019 U.S. Dist. LEXIS 187260, at *13 (N.D. Ohio Sept. 24, 2109) ("Conclusory statements are not enough—a petitioner must 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'").

### b. <u>Wright's Testimony</u>

Johnson has failed to establish that Wright's testimony is new, reliable evidence of his actual innocence. At Johnson's original trial, Wright refused to testify "even though he was threatened with contempt and offered immunity." (ECF Doc. 1, PageID#4). According to Johnson, Wright is now prepared to testify that: (1) he lied to police officers during his interrogation; (2) the only photo police showed him during his interrogation was Johnson's photo; and (3) Johnson was not the shooter at the murder. (*Id.*). While Johnson indicates what he *believes* Wright's testimony will be, he has failed to provide any affidavit that confirms that Wright *would* provide this proposed testimony. (*See generally* ECF Doc. 1, PageID#4-5; ECF Doc. 6, PageID#250). Here, Johnson has not supported his allegations with "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Souter v. Jones*,

395 F.3d 577, 588 (6th Cir. 2005) (citing *Schlup*, 513 U.S. at 324). Rather, he presents his own unsubstantiated allegations, which do not suffice to establish a credible claim of actual innocence under the *Schlup* standard.

And even if Wright is now willing to offer testimony, this evidence would not be new and reliable evidence that would demonstrate that no reasonable juror would have found Johnson guilty. Even taking Johnson's unsubstantiated allegations as true, Melton Peoples – a witness at the scene of the shooting - testified that Wright identified Johnson at the scene of the shooting. (*Id.* at 153). Based on Johnson's failure to provide affirmative evidence and the record before this Court, Johnson's proposed evidence would not be new and reliable evidence that would demonstrate that no reasonable juror would have found him guilty.

### c.  Exculpatory Eyewitnesses

To the extent that Johnson asserts that the three witnesses that were not called to testify would establish actual innocence, the proposed testimony of these witnesses would not constitute new, reliable evidence. Johnson posits that testimony from Christopher Johnson, Denieccia Frothner, and Daylen Johnson would have been exculpatory because they would have established that, at the time of the murder, they were with Johnson at his brother's home. (*Id.* at 3). He asserts that these three eyewitnesses "have, on their own accord, sought out representation and have given depositions affirming, under oath, that they were with Zachary Johnson at the time the incident took place." (*Id.*).

Johnson has presented only his conclusory assertions regarding these witnesses' potential testimony.  (*See id.* at 3). He failed to attach a single sworn affidavit or other documentary evidence to support his claim, nor did he address this shortcoming in his Traverse.  Thus, he cannot satisfy the demanding *Schlup* actual innocence standard. *See Townsend v. Lafler*, No. 02-2151, 2004 WL

1098757, at *610 (6th Cir. May 14, 2004) ("Because [the petitioner] never produced the affidavit [for the testimony at issue], he is in no position to claim it supports his habeas petition."); *see also Dysen v. MacLaren*, No. 5:17-cv-10006, 2017 WL 3642163, at *2 (E.D. Mich. Aug. 24, 2017) ("Petitioner provides no affidavit or any other offer of proof demonstrating that the alibi witnesses were willing to testify or what their testimony would have been. This speculative claim is insufficient to satisfy *Schlup*'s demanding standard for "new reliable evidence" of actual innocence."); *Waters v. Renico*, No. 04-10199-BC, 2005 WL 1838625, at *5 (E.D. Mich. July 29, 2005) ("The petitioner has not made a showing within the meaning of *Schlup v. Delo* that he is actually innocent. His presentation is limited to his own unsupported, self-serving statements; he has offered no affidavits or other documentary evidence in support of his claims of actual innocence."); *Kindred v. Birkett*, No. 05-CV-71553-DT, 2006 WL 1662547, at *5 (E.D. Mich. June 8, 2006) ("Petitioner has made no such showing of his actual innocence; there are no affidavits that support his claim.").

Further, even if Johnson's trial and appellate attorneys failed to pursue this issue—and provided ineffective assistance of counsel as a result—that does not explain why Johnson himself never disclosed this allegedly exculpatory evidence in any post-conviction filing or supported this claim with sworn documentary evidence in his Petition. If one were actually innocent because one was not at the scene of a crime, that fact and the availability of alibi witnesses would have been known to Johnson from the beginning. It is unclear—and Johnson offers no plausible reason—for his failure to raise this in his direct appeal to the Ohio Court of Appeals, his 26(B) application, or his direct appeal to the Ohio Supreme Court. Significantly, as noted above, Johnson still has not filed *any* post-conviction relief petition under O.R.C. § 2953.21(A) raising such an issue. He offers no explanation in his Petition or Traverse beyond blaming his counsel for failing to investigate.

Thus, even if he presented affidavits from these individuals, Johnson's failure to mention this key, purportedly exculpatory piece of evidence would make the late appearance of such affidavits inherently suspicious.

Moreover, even if this Court could deem the potential testimony as reliable, it would not demonstrate that "more likely than not, no reasonable juror would find [Johnson] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). In Johnson's case, Melton Peoples - a witness at the scene of the shooting - testified to Wright's identification of Johnson at the scene of the murder. (ECF Doc. 5-1, PageID#142). Moreover, a fellow jail inmate testified that Johnson confessed to the murder. (*Id.* at 143).  In sum, Johnson has failed to establish actual innocence to excuse his procedural default. Accordingly, I recommend that this Court deny Johnson's claim because it is procedurally defaulted.

## VII.   RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the

30

issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

If the Court accepts my recommendations, Johnson will not be able to show that the court's rulings on his claims are debatable among jurists of reason. His sole claim for relief is procedurally defaulted. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

### VIII.  RECOMMENDATION

Because Johnson has presented only a procedurally defaulted claim, I RECOMMEND that the Court DISMISS and/or DENY Johnson's petition for writ of habeas corpus under 28 U.S.C. § 2254 and not grant him a Certificate of Appealability. I also RECOMMEND that Kenneth Black,

the Warden of Richland Correctional Institution—where Johnson is currently incarcerated—should be substituted for Harold May as the Respondent in this case.

### IX.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: November 16, 2022

_s/ Jennifer Dowdell Armstrong_
Jennifer Dowdell Armstrong
United States Magistrate Judge